**2024 BNH 001**     Note:   This is an unreported opinion.  Refer to LBR 1050-1 regarding citation.
_____

# UNITED STATES BANKRUPTCY COURT
## DISTRICT OF NEW HAMPSHIRE

In re:                                                                                                  Bk. No. 21-10693-BAH
                                                                                                        Chapter 7
Gary M. St. Laurent,
        Debtor


Michael S. Askenaizer,
        Plaintiff
v.                                                                                                      Adv. No. 22-1017-BAH

Jennifer V. Pierce,
        Defendant


*Edmond J. Ford*
*Ford, McDonald, McPartlin & Borden, P.A.*
*Portsmouth, New Hampshire*
*Attorney for Plaintiff*

*Jennifer Louise Proulx*
*Proulx Law Offices*
*Manchester, New Hampshire*
*Attorney for Defendant*


## MEMORANDUM OPINION

The Court has before it a Motion for Summary Judgment (Doc. No. 36) filed by the Plaintiff and Chapter 7 Trustee (the "Trustee"), and a Cross-Motion for Summary Judgment (Doc. No. 43) filed by the Defendant Jennifer S. Pierce (the "Defendant").  For the reasons set forth below, the Trustee's motion is granted and the Defendant's cross-motion is denied.

## I. JURISDICTION

This Court has jurisdiction over the subject matter and the parties pursuant to 28 U.S.C. §§ 1334 and 157(a) and Local Rule 77.4(a) of the United States District Court for the District of New Hampshire. This is a core proceeding in accordance with 28 U.S.C. § 157(b).

## II. SUMMARY JUDGMENT STANDARD

In bankruptcy proceedings, summary judgment is governed by Federal Rule of Bankruptcy Procedure ("Bankruptcy Rule") 7056, which incorporates Federal Rule of Civil Procedure ("Rule") 56 and its standard into bankruptcy practice. Weiss v. Wells Fargo Bank, N.A. (In re Kelley), 498 B.R. 392, 397 (B.A.P. 1st Cir. 2013) (citing Desmond v. Varrasso (In re Varrasso), 37 F.3d 760, 762 (1st Cir. 1994)); Fed R. Bankr. P. 7056; Fed. R. Civ. P. 56. Rule 56(a) provides that a movant is entitled to summary judgment if the "movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a). "Genuine issues of fact are those that a factfinder could resolve in favor of the nonmovant, while material facts are those whose existence has the potential to change the outcome of the suit." Green Mountain Realty Corp. v. Leonard, 750 F.3d 30, 38 (1st Cir. 2014) (quoting Tropigas de Puerto Rico, Inc. v. Certain Underwriters at Lloyd's of London, 637 F.3d 53, 56 (1st Cir. 2011)). In assessing the summary judgment record, a court must draw all reasonable inferences in favor of the non-moving party, but is "not obliged to accept as true or to deem as a disputed fact, each and every unsupported, subjective, conclusory, or imaginative statement made to the Court by a party." Torrech-Hernandez v. Gen. Elec. Co., 519 F.3d 41, 47 (1st Cir. 2008); see Adamson v. Walgreens Co., 750 F.3d 73, 78 (1st Cir. 2014).

As the Supreme Court explained, "[t]he inquiry performed is the threshold inquiry of determining whether there is the need for a trial—whether, in other words, there are any genuine factual issues that properly can be resolved only by a finder of fact because they may reasonably be resolved in favor of either party." Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 250 (1986). "[T]he mere existence of some alleged factual dispute between the parties will not defeat an otherwise properly supported motion for summary judgment; the requirement is that there be no genuine issue of material fact." Id. at 247-48 (emphasis in original). "With respect to issues on which the non-movant would bear the burden of proof at trial, the non-movant … must adduce sufficient evidence to permit the trier of fact to resolve that issue in his favor. … If the non-movant fails to make the required showing on such an issue and the issue is a dispositive one, summary judgment is appropriate." Harrington v. Simmons (In re Simmons), No. 15-9005, 2016 WL 234516, at *3 (1st Cir. Jan. 20, 2016) (citing Borges ex rel. S.M.B.W. v. Serrano-Isern, 605 F.3d 1, 5 (1st Cir. 2010)).

When evaluating cross-motions for summary judgment, each motion need not be considered in a vacuum. Wells Real Estate Inv. Trust II, Inc. v. Chardon/Hato Rey P'ship, S.E., 615 F.3d 45. 51 (1st Cir. 2010). "Cross-motions for summary judgment do not alter the summary judgment standard, but instead simply require [the court] to determine whether either of the parties deserves judgment as a matter of law on the facts that are not disputed." Wells Real Estate, 615 F.3d at 51 (citing Adria Int'l Group, Inc. v. Ferre Dev., Inc., 241 F.3d 103, 107 (1st Cir. 2001)) (internal quotation marks omitted).

**III. SUMMARY JUDGMENT RECORD**

The summary judgment record establishes the following. Debtor Gary St. Laurent (the "Debtor") and the Defendant were married. In May 2015, the Debtor filed a petition for divorce from the Defendant. On December 23, 2015, the New Hampshire Circuit Court, Family Division (the "Circuit Court") entered a Final Decree on Petition for Divorce, Legal Separation, or Civil Union Dissolution (the "Divorce Decree").[1]

During their marriage, the Debtor and the Defendant jointly owned a house located at 50 Bowman Street, Laconia, New Hampshire (the "Property"), which was encumbered by a mortgage granted by both parties. The Divorce Decree awarded the Property to the Defendant. The Divorce Decree further stated that the Defendant was to "refinance the mortgage … *or the [P]roperty shall be sold.*" (emphasis added).

The Defendant subsequently filed a Motion for Clarification/Reconsideration.[2] The Circuit Court entered an order upon that motion on January 20, 2016 (the "Clarification Order").[3] The Clarification Order established a framework and a specific calculation for determining how much, if anything, the Defendant would have to pay the Debtor if the Property were sold rather than refinanced under the terms of the Divorce Decree. The Clarification Order stated:

> If the [P]roperty is sold, the net proceeds from the sale shall be divided by paying [the Defendant] $5,000 plus the amount she borrowed from her retirement to purchase the house, plus the amount of any reduction in the mortgage balance between December 15, 2015 and the date of sale, and the remaining net proceeds shall be equally divided between the parties.
>
> **For Example**, if the net proceeds from the sale (after payment of the mortgage, taxes, any other liens, commission if any, and costs of closing) are $50,000, and if the balance of the

---

[1] The Court takes judicial notice of the Divorce Decree at Doc. No. 36-3.

[2] The Motion for Clarification/Reconsideration is not in the record. Additionally, the parties have not stated what specific relief the Defendant sought through the motion.

[3] The Court takes judicial notice of the Clarification Order at Doc. No. 36-4.

mortgage as of December 15, 2015 was $125,000, and had been paid down to $123,000 by the time the property was sold, and if [the Defendant] had borrowed $10,000 from her retirement for the down payment, then the net proceeds would be divided as follows:

| | |
|---|---|
| Net proceeds: | $50,000 |
| Contribution from [the Defendant's] mother: | ($5,000) |
| Retirement asset for down payment: | ($10,000) |
| Reduction in principal[4] from 12/15/2015 to date of sale: | ($2,000) |
| Remaining net proceeds: | $37,000 |
| Half of remaining proceeds to each party: | $18,500 |

The Defendant actually only contributed $1,000.00 from her retirement asset for the down payment on the Property. The Defendant never refinanced the mortgage on the Property. On June 4, 2021, she sold the Property, resulting in net proceeds of $91,864.89.[5] However, the Defendant never paid the Debtor his share of the sale proceeds due under the terms of the Clarification Order. On December 6, 2021, the Debtor filed his voluntary chapter 7 petition.

**IV. DISCUSSION**

The Trustee timely brought a single-count complaint against the Defendant, seeking turnover of estate assets under 11 U.S.C. § 542. The Trustee alleges that the Defendant still holds the amount due to the Debtor under the Divorce Decree and the Clarification Order. The Defendant counters that the Trustee, standing in the shoes of the Debtor, should not be able to recover anything from the sale of the Property because (1) the Divorce Decree and the Clarification Order contemplated the Debtor receiving sale proceeds only if and to the extent

---

[4] Though the Clarification Order uses the term "principal" in the example of the calculation of each party's share of sale proceeds, both the Trustee and the Defendant agree that "principal" was a misnomer by the Circuit Court, and that the Clarification Order should have more accurately referred to that component of the calculation as a reduction in "mortgage balance," as it did in other areas of the Clarification Order.

[5] The parties have not provided a final sale price in their statements of material facts. However, the parties have agreed that the net proceeds of the sale of the Property are $91,864.89.

there was equity in the Property at the time of divorce, and (2) the Debtor owed the Defendant significant amounts—not accounted for in the Divorce Decree or the Clarification Order—which she believes she is entitled to set off against the Debtor's share of sale proceeds.

11 U.S.C. § 542(b) states that "an entity that owes a debt that is property of the estate and that is mature, payable on demand, or payable on order, shall pay such debt to, or on the order of, the trustee … ." Property of the estate includes "all legal and equitable interests of the debtor in property as of the commencement of the case." 11 U.S.C. § 541(a)(1).

### A. Rooker-Feldman Doctrine and Res Judicata

Both the Trustee and the Defendant cite the Rooker-Feldman doctrine in support of their arguments. The doctrine derives from a pair of United States Supreme Court opinions: D.C. Court of Appeals v. Feldman, 460 U.S. 462 (1983); and Rooker v. Fid. Trust Co., 263 U.S. 413 (1923). The doctrine generally prevents lower federal courts, including this Court, from reviewing the final judgments of state courts. "Under the Rooker-Feldman doctrine, federal courts lack jurisdiction over federal actions that essentially invite federal courts to review and reverse unfavorable state court judgments." Ford v. Skorich (In re Skorich), 332 B.R. 77, 85 (Bankr.D.N.H. 2005). However, the Supreme Court has limited the Rooker-Feldman doctrine's application to specific fact patterns. "[T]he Rooker-Feldman doctrine … applies only in the 'limited circumstances' where 'the losing party in state court filed suit in federal court after the state proceedings ended, complaining of an injury caused by the state court judgment and seeking review and rejection of that judgment.'" Federacion de Maestros de P.R. v. Junta de Relaciones del Trabajo de P.R., 410 F.3d 17, 23-24 (1st Cir. 2005) (quoting Exxon Mobil Corp. v. Saudi Basic Indus. Corp., 544 U.S. 280, 291 (2005)). Accordingly, while the Rooker-Feldman doctrine may apply to any argument made by the Trustee (standing in the Debtor's shoes) that this Court

6

should review the Divorce Decree or the Clarification Order, it does not apply to any of the Defendant's arguments regarding the Divorce Decree or the Clarification Order, since she did not bring this adversary proceeding.

However, preclusion law still applies where the Rooker-Feldman doctrine does not. Exxon Mobil, 544 U.S. at 284. Res judicata, also known as claim preclusion, prevents parties from relitigating claims or issues "which were raised or could have been raised in a previous action, once a court has entered a final judgment on the merits in the previous action." Heghmann v. Indorf (In re Heghmann), 316 B.R. 395, 402 (B.A.P. 1st Cir. 2004). Under federal law, a federal court must apply the laws of the state in which the previous court sat to determine whether res judicata applies. Migra v. Warren City Sch. Dis. Bd. Of Educ., 465 U.S. 75, 81 (1984).

The Circuit Court is a New Hampshire state court. Accordingly, New Hampshire preclusion law applies to the Divorce Decree and the Clarification Order. Under New Hampshire law, the three elements of res judicata are (1) the parties to the present case are the same or in privity with the parties to the previous case, (2) both cases present the same cause of action, and (3) the previous case concluded with a final judgment on the merits. Gray v. Kelly, 161 N.H. 160, 164 (2010) (citing In re Juvenile 2004-637, 152 N.H. 805, 808 (2005)).

Here, all three elements of res judicata are met under New Hampshire law. The Defendant was a party to the divorce proceedings. The Trustee, representing the bankruptcy estate that includes the Debtor's rights under the Divorce Decree and the Clarification Order, is in privity with the Debtor, who was a party to the divorce proceedings. The Divorce Decree and the Clarification Order are final orders of the Circuit Court, adjudicated on the merits of the parties' claims. Moreover, the New Hampshire Supreme Court has found that res judicata applies to a

final divorce decree's determination of a party's rights and liabilities.  In re Mason & Mason, 164 N.H. 391, 398 (2012).  Accordingly, based upon New Hampshire law, res judicata precludes any argument made by the Defendant for altering or adding to the terms of either the Divorce Decree or the Clarification Order.

### B. Equity in the Property

According to the Defendant, the Divorce Decree and the Clarification Order only provided a calculation to determine what the Debtor should receive in a sale of the Property if and to the extent any equity existed in the Property at the time of the divorce.  See Def.'s Mem. Of Law, Doc. No. 43-1, 8.  The Debtor, the argument goes, did not receive or retain any post-divorce ownership interest in the Property under the Divorce Decree or the Clarification Order.  Thus, the Defendant asserts the Debtor is only entitled to his share of sale proceeds reflecting equity that existed in the Property at the time of the divorce, i.e. the last time he had an ownership interest in the Property. The Defendant argues that the Debtor, and now the Trustee, should not be able to capitalize on any post-divorce increase in the value of the Property.  According to the Defendant, since there was no equity in the Property at the time of divorce, the Debtor was entitled to nothing from the sale of the Property.

While the Defendant's argument regarding equity may have been a good argument to raise to the Circuit Court eight years ago,[6] it cannot succeed today in this Court.  Both the Divorce Decree and the Clarification Order are clear.  The Divorce Decree required the Defendant to refinance the mortgage by December 15, 2015, or sell the Property.  The

---

[6] The record lacks any pleadings or arguments made by either party in the divorce proceedings.  Thus, it remains unclear what arguments were and were not presented to the Circuit Court.  Nevertheless, the relevant inquiry with respect to res judicata is not limited to what *was* presented to a state court.  More accurately, an inquiry under res judicata is also concerned with what *could have been* presented to a state court.  A party cannot have another bite at the apple in federal court for their failure to make potentially successful arguments in state court.

Clarification Order provides a detailed calculation for determining what the Debtor shall receive if the Defendant did not refinance the mortgage and the Property were sold.  Neither order addresses the issue of equity in the Property or the foreseeable possibility that the value of the Property could increase or decrease between the date the Divorce Decree was entered and the date of the sale of the Property.  This Court cannot go beyond the Circuit Court's orders and limit the Debtor's portion of sale proceeds based on equity existing in the Property at the time of the divorce.

### C.  Defendant's Asserted Setoffs

Next, the Defendant argues that she is entitled to numerous setoffs against the Debtor.  The Trustee has assented to some of these setoffs, essentially on the grounds that they are de minimis and not worth arguing about.  The Clarification Order provides the Defendant the right to certain other setoffs with which the Trustee does not quarrel.  However, the Defendant's remaining asserted setoffs are not provided for in the Divorce Decree or the Clarification Order and have not been assented to by the Trustee.  For those, this Court is precluded from awarding the Defendant anything, other than what the Trustee has voluntarily conceded.

#### 1.  Setoffs Provided for in the Clarification Order

The Clarification Order provided the Defendant the right to set off certain amounts from the Debtor's share of sale proceeds if the Debtor failed to pay the Defendant those amounts.  Specifically, the Clarification Order stated the Defendant could set off the cost of the Debtor's share of a water bill from a time when he lived at the Property, and the cost to replace the locks on the Property.  The Debtor never paid the Defendant either amount.  The parties agree that Debtor's share of the water bill is $85.00 and his share of the cost to replace the locks is $50.00.  Accordingly, those amounts are deducted from the Debtor's share of sale proceeds.

## 2. Setoffs for Personal Property listed in the Divorce Decree

The Divorce Decree awarded certain items of personal property to the Defendant. Specifically, it awarded the Defendant a rifle, a blanket, a camera, and some tools. Unlike the water bill and the cost to replace the locks, the Divorce Decree and the Clarification Order do not expressly allow the Defendant to set off the value of those items from the Debtor's share of the sale proceeds. However, the Trustee has assented to setting off the value of those items at values agreed upon by the parties for the purposes of these cross-motions. The agreed-upon values are as follows: $250.00 for the camera, $75.00 for the blanket, $799.99 for the rifle, and $150.00 for the tools. Accordingly, those amounts are also deducted from the Debtor's share of the sale proceeds.

The Defendant claims she is also entitled to set off the value of a "towing company plate." See Def's Mem. of Law, Doc. No. 43-1, 14. The Defendant provides no explanation of what that item is, or its value, or any justification for why she is entitled to set off its value. The Clarification Order does provide that the Defendant is entitled to a "transport plate." Assuming the "towing company plate" and "transport plate" are the same item, the Defendant is still not entitled to set off its value. Just as the Divorce Decree and the Clarification Order did not entitle the Defendant to set off the value of the personal property listed above, they did not provide that the Defendant could set off the value of the transport plate. Unlike the other items of personal property, the Trustee has not assented to a setoff for the transport plate's value. The fact that the Clarification Order does provide for setoff of the water bill and the cost to replace locks and does not provide for setoff of the value of the transport plate indicates that the Circuit Court intended to provide the Defendant with a different mechanism entirely for recovering the value of the transport plate, e.g., a motion seeking to hold the Debtor in contempt. Since the Divorce Decree

10

and the Clarification Order apparently exclude setoff as a remedy with respect to the transport plate, and the Trustee does not assent to setting off its value, the Defendant is not entitled to set off any amount for the transport plate.

### 3. Other Asserted Setoffs

Finally, the Defendant asserts a host of additional setoffs against the Debtor's share of the sale proceeds.[7] All of these setoffs suffer from the same defect: they are costs and circumstances that were present (and of which the parties were aware) at the time of the divorce proceedings. For example, the Defendant asserts that the Debtor was responsible for the destruction of a furnace on the Property and that she is now entitled to set off the cost she incurred in having the furnace replaced. According to the Defendant, the furnace was damaged beyond repair at a time when the Debtor still occupied the Property and a new furnace was installed in November of 2015, after the final hearing on, but before entry of, the Divorce Decree. The Defendant filed her motion for reconsideration with the Circuit Court after the furnace was replaced. If the Debtor had caused the damage to the furnace that the Defendant claims, the Defendant should have addressed that in the Circuit Court. It is not the place of a federal bankruptcy court to make any rulings eight years later regarding property that was affected by conduct occurring at the marital property, when the parties had the opportunity to timely address that conduct in the Circuit Court and failed to do so.

The Circuit Court did not award these setoffs to the Defendant in either the Divorce Decree or the Clarification Order, and that is sufficient to preclude this Court from creating a

---

[7] The asserted setoffs include: the cost to replace a furnace on the Property, final water/sewer invoice, closing costs, taxes for July 2021, cost to upgrade the electric on the Property, mortgage payments made between the time of the divorce and the sale date, the fair rental value for the property for a time the Debtor excluded the Defendant from the Property in violation of an order of the Circuit Court, and an undetermined cost to repair and upgrade the Property on two other occasions. Def.'s Mem. of Law, Doc. No. 43-1, 9-10.

11

right for the Defendant to set off those amounts under *res judicata* principles. If the Defendant wished to benefit from such setoffs, she could or should have asked the Circuit Court to address those issues at any of the hearings or in any of the pleadings in the divorce proceedings. Accordingly, the Defendant is categorically denied all asserted setoffs that the Trustee has not assented to and that relate to either (1) action taken prior to the issuance of the Clarification Order, or (2) the maintenance and sale of the Property.

### D. Other Alleged Issues of Material Fact

Despite moving for summary judgment herself, the Defendant argues that there are in fact genuine disputes of material fact still existing that preclude summary judgment. She recites what she calls "compelling" actions of the Debtor after the Divorce. One such assertion is that the Debtor retained possession of personal property awarded to the Defendant in the Divorce Decree. The only arguable dispute potentially created by the Debtor's alleged failure to return the Defendant's personal property is extinguished by the Trustee's willingness to allow the Defendant to set off those amounts from the Debtor's share of the proceeds.

The Defendant also highlights the Debtor's failure to seek a contempt order against the Defendant for not refinancing or selling the Property within the year allotted by the Circuit Court for refinancing the mortgage. The Divorce Decree and the Clarification Order do not require the Debtor to seek a contempt order to retain his rights to a share of sale proceeds. Thus, that fact, even to the extent it may be in dispute, is not material to any of the issues present in this case.

Next, the Defendant attempts to create a dispute regarding the value of the Property based on an appraisal from a real estate broker she received shortly after her divorce from the Debtor. However, the Court need not address the appraisal since the value of the Property is not relevant to the calculation of the Debtor's share of sale proceeds. The Circuit Court required an appraisal

12

only if the Defendant had refinanced the mortgage. Moreover, that appraisal was meant to be done by the lender offering the refinancing. See Contempt Order, Doc. No. 36-4, 1. Here, the Defendant ultimately sold the Property rather than refinance the mortgage, making the appraised value of the Property immaterial to any dispute in this case.

Finally, the Defendant argues that the Trustee misinterprets what the Circuit Court meant when it ruled that the net proceeds needed to be reduced by the "reduction in mortgage balance between December 15, 2015 and the date of sale." The Trustee states that the "reduction in mortgage balance" is calculated by subtracting the amount outstanding on the mortgage on the date of the sale from the amount outstanding on the mortgage as of December 15, 2015. The Defendant, on the other hand, argues that the term "reduction" includes all payments made by the Defendant towards the mortgage balance between December 15, 2015, and the sale date. Moreover, the Defendant asserts, "mortgage balance" is made up of mortgage principal and interest, property taxes, and insurance. Thus, under the Defendant's interpretation, the Defendant would be able to reduce the net sale proceeds by $80,646.25.

However, the Clarification Order provides an illustrative example that completely answers what was meant by "reduction in mortgage balance." Under the illustrative example, the mortgage balance as of December 15, 2015, is $125,000.00 and is "paid down to $123,000" at the time of sale. The subsequent calculation provided for a reduction of $2,000.00 from the Net Sale Proceeds.[8] The illustrative example only contemplates the amount outstanding at the time of the sale, not the amount actually paid towards the mortgage balance. Thus, the Circuit Court clearly intended for the "reduction in mortgage balance" to mean the difference between the

---

[8] Both parties note that the Clarification Order contained a misnomer in the calculation line meant to represent the reduction in the mortgage balance, as it instead states "Reduction in Mortgage Principal." Both sides acknowledge that the use of the word "principal" in that context is inconsistent with the rest of the Clarification Order and Divorce Decree. That error does not affect the Court's analysis.

13

amount owed on the mortgage on December 15, 2015, and the amount owed on the date of the sale. No issue of material fact exists with respect to the reduction in the Debtor's sale proceeds based on the reduction in mortgage balance.

### E. Calculation of the Debtor's Share of Proceeds

The Defendant, despite her efforts, has not demonstrated that a genuine dispute of material fact exists such that this Court cannot rule on the Trustee's motion as a matter of law. Accordingly, based on the undisputed facts in this case, the Court finds that the Trustee is entitled to judgment in his favor as a matter of law under 11 U.S.C. § 542(a). The Defendant sold the Property in accordance with the Divorce Decree and the Clarification Order, giving the Debtor an interest in his share of the sale proceeds. The Debtor held that interest on the petition date, making it property of the estate. Moreover, the Debtor's interest was matured, making it subject to turnover under 11 U.S.C. § 542(b).

The calculation of the Debtor's share of the sale proceeds subject to turnover under 11 U.S.C. § 542(b), based on the terms of the Clarification Order and the agreement of the Trustee and the Defendant in this case, is as follows:

| | |
|---|---|
| Net sale proceeds | $91,864.89 |
| Contribution from Defendant's Mother | ($5,000.00) |
| Defendant's Retirement Asset Contribution | ($1,000.00) |
| Reduction in mortgage balance from 12/15/15 to Sale | ($12,743.31) |
| Equity in House | $73,121.58 |
| | |
| Defendant's Half of Equity | ($36,560.79) |
| Unpaid Water Bill | ($85.00) |
| Cost to Replace Locks | ($50.00) |
| Rifle | ($799.99) |
| Camera | ($250.00) |
| Blanket | ($75.00) |
| Tools | ($150.00) |
| **Debtor's Net Share of Proceeds** | **$35,150.80** |

## V. CONCLUSION

Having reviewed the summary judgment record in the light most favorable to each opposing party, the Court finds that there is no genuine dispute of material fact and that the Trustee is entitled to judgment as a matter of law on Count I of the Trustee's complaint. The Trustee is entitled to recover $35,150.80 from the Defendant. Accordingly, the Trustee's Motion for Summary Judgment shall be granted and the Defendant's Cross-Motion for Summary Judgment shall be denied. The Court will issue a separate judgment consistent with this opinion.

ENTERED at Concord, New Hampshire.


Date: February 26, 2024          /s/ Bruce A. Harwood
                                 Bruce A. Harwood
                                 Chief Bankruptcy Judge